UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TIMOTHY M. TURNER, | ) |
| Plaintiff, | ) Civil Action No. 3:20-CV-P813-CHB |
| v. | ) **MEMORANDUM OPINION** |
| HELEN R. LONG, *et al.*, | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Timothy M. Turner filed the instant pro se 42 U.S.C. § 1983 action, proceeding in forma pauperis. The complaint is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will allow some of Plaintiff's claims to proceed and dismiss other claims.

## I. SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff was an inmate at the Luther Luckett Correctional Complex (LLCC) at the time pertinent to the complaint. [R. 1, p. 1] He sues the following Defendants in their individual and official capacities: LLCC Unit Administrators Helen R. Long and Benjamin Harlan; Internal Affairs Lt. Berton Bare; and Warden Scott Jordan. *Id.* at 2.

Plaintiff states that on June 29, 2020, he was housed in the Restrictive Housing Unit (RHU) where he was required to wear paper boxer shorts. *Id.* at 5. After four days in the same boxers, the boxers "had a foul odor and smelling [sic] of urine and were stained as well as falling apart." *Id.* Plaintiff informed Defendants Long and Harlan about the boxers, and they told him that boxers in his size, XXX-large, were on back order. *Id.* He states Defendant Long repeatedly told him that he could wear a pair of size large boxers. *Id.* Plaintiff states that he weighed 350

pounds and could not wear a size large and that he "asked respectfully and repeatedly throughout the month . . . that he be allowed to wear his personal boxer's [sic]." *Id.* He reports that as of July 15, 2020, he had spent twenty-two days "begging and pleading daily for relief" and that "the boxer's [sic] now had mold [in] them, urine and feces stains, an awful foul odor and falling [sic] apart beyond wearing." *Id.*

Plaintiff asserts that on July 15, 2020, he was told that wearing the size large boxers was his only option. *Id.* He reports that he attempted to follow the request so that he would not be given a write-up for failing to obey an order. *Id.* He states that he "could not pull them up all the way for fear of them busting apart." *Id.* He states that a general inspector was present and told Plaintiff that he had asked if he could give Plaintiff a pair of his boxers from his property but he "was told no by the captain's office." *Id.* (emphasis in original). Plaintiff asserts that he walked down the hall to his room while other inmates heckled him and made sexually explicit comments. *Id.* He states that when her returned to his cell the boxers came apart at the seam. *Id.* at 5–6. He states, "The plaintiff was made to wear them through the night with his buttocks showing naked, with a cellmate and also the cell had a camera in it for others to view!" *Id.* at 6. According to the complaint, the next morning Plaintiff informed Defendant Harlan that his boxers were ripped and pleaded with him to allow him to wear a pair of his own boxers until the paper boxers in his size arrived. *Id.* He states, "Again plaintiff is told 'No' and the only comment that followed from U/A Harlan's mouth were 'Nice.'" *Id.* (emphasis in original).

Plaintiff also reports that on July 16, 2020, he was allowed to go to Recreation for one hour. *Id.* He states that "for the most part he kept on a suicide smock as that is what they make all 'RHU' inmates wear" but that he was "hot and sweaty at REC" and took his suicide smock off so that he could exercise. *Id.* He reports that Defendant Bare was present and witnessed

Plaintiff "again getting heckled and made fun of with comments of a sexual nature." *Id.* He states that he asked Defendant Bare if he could help him by filing a Prison Rape Elimination Act (PREA) complaint and told him that "he shouldn't be made to wear . . . large paper boxers that don't fit and show pure nudity of plaintiff's body including his bare buttocks and genitals." *Id.* Plaintiff asserts that Defendant Bare responded that it was "not a PREA and 'looks like your ass [is] out luck!'" *Id.* Plaintiff states, "When Lt. Bare made this comment, several of the inmates laughed and began saying obscene statements and comments." *Id.* He reports that "[d]ue to the noise level" a non-defendant female staff member arrived. *Id.* at 6–7. Plaintiff alleges that he explained the situation to her and asked her "to please help and take him back to his cell." *Id.* at 7. He further states that "[t]hrough tear's [sic] he begged [her] to please fix all this." *Id.* The staff member then left the recreation area and returned within fifteen minutes to give Plaintiff a pair of his personal boxers from Plaintiff's property. *Id.*

Based on these allegations, Plaintiff states that Defendant Long, Harlan, and Bare, "acting alone or in conspiracy with each other," violated his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 8.

Plaintiff also states that Defendants Long, Harlan, and Jordan, "acting alone or in complicity," violated his Eighth Amendment rights when they made him wear "a suicide smock, paper boxer's [sic], eat with a paper spoon, and suicide tray." *Id.* He states that a person is "placed in the suicide attire for usually 72 hours or 3 days" to determine if he is no longer a harm to himself or others and then moved to "regular seg[regation] or RHU" where the inmate is allowed "1 pair of boxer's [sic] 'cloth,' 1 pair of RHU socks, 1 pair RHU top and bottom to be reinstated." *Id.* at 9. Plaintiff claims that he was kept in RHU for the entirety of his stay at LLCC, but he did not need these precautions because "Plaintiff never attempted suicide, talked

about suicide nor did the plaintiff act homicidal, attempt homicide or speak of harming another person." *Id.* He further states,

> By making one live as a person who is contemplating suicide or homicide making that individual wear outfit suicide smock, not for 72 hours but for entirety of his or her stay in RHU takes a toll on a normal persons [sic] emotions and mindset. Plaintiff is still currently housed in RHU pending transfer.[1]

*Id.* He states that this treatment has caused him "to become severely depressed, feeling hopeless and sad" and led to an "increase of psych medications and counseling needed where as such were not needed before." *Id.*

Plaintiff also states that Defendant Bare violated his Fourteenth Amendment due process rights when he

> made statements to Michael Carper in front of several inmates that the plaintiff was a confidential informant; thus placing plaintiffs [sic] life in population at risk for serious bodily harm or death; and by doing so has caused plaintiff to be severely depressed, fear of his life and without property.

*Id.* at 10. He asserts that Defendant Bare's actions "caused plaintiff to be severly [sic] depressed, [and] fear for his life," and that he "in fact was assaulted, and then was so scared he in fact had to request protective custody, therefore being deprived of his normal property due to [Defendant] Bare's actions." *Id.* Plaintiff also states that Defendant Bare violated his Fourteenth Amendment rights when he denied Plaintiff a PREA investigation. *Id.*

Plaintiff also alleges violations of Kentucky Constitution Section 17 and Kentucky Revised Statutes (KRS) §§ 71.020, 71.040, 71.060, and 441.025. *Id.* at 10–13.

As relief, Plaintiff seeks compensatory and punitive damages. *Id.* at 14.

## II. STANDARD

---

[1] Plaintiff has since been transferred to another facility.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Further, while this Court recognizes that pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*,

951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

#### A. Official-capacity claims

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendants are employees of LLCC and are therefore state employees. Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169.

Therefore, Plaintiff's official-capacity claims against Defendants for damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from a Defendant who is immune from such relief.

#### B. Individual-capacity claims

**1. Defendant Jordan**

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Court is aware of its duty to construe pro se complaints liberally, Plaintiff

is not absolved of his duty to comply with the Federal Rules of Civil Procedure by providing Defendants with "fair notice of the basis for his claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). To state a claim for relief, the plaintiff must show how each defendant is accountable because the defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976).

In the present case, the complaint contains no allegations of Defendant Jordan's personal involvement in the events. The only allegation concerning Defendant Jordan is Plaintiff's statement that he along with Defendants Long and Harlan violated his Eighth Amendment rights "when acting alone or in complicity" made [Plaintiff] wear a suicide smock, paper boxers, eat with a paper spoon, and suicide tray." [R. 1, p. 8] The allegation is too vague to allege Defendant Jordan's personal involvement, and the complaint alleges no other specific action by Defendant Jordan.

Moreover, Plaintiff's allegation that Jordan acted in "complicity" or conspiracy with other defendants is also insufficient to support Plaintiff's § 1983 claim. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (citation omitted). A conspiracy will exist under § 1983 when there is "an agreement between two or more persons to injure another by unlawful action." *Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985)). It must be shown that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* (quoting *Hooks*, 771 F.2d at 943–44). Upon review of

Plaintiff's claims, it is evident that he has failed to plead these claims with the requisite specificity. *See Gutierrez*, 826 F.2d at 1539 (finding that similar allegations "lack the requisite material facts and specificity necessary to sustain a conspiracy claim"). Plaintiff's allegations are conclusory and do not support a claim that survives initial review.

Furthermore, to the extent Plaintiff seeks to hold Defendant Jordan liable based on his supervisory authority as LLCC Warden, the doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, there must be "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872–74 (6th Cir. 1982)). The complaint contains no allegations to support a claim of supervisory liability against Defendant Jordan.

Accordingly, the individual-capacity claim against Defendant Jordan must be dismissed for failure to state a claim upon which relief may be granted.

**2. PREA Investigation**

Plaintiff alleges a Fourteenth Amendment claim against Defendant Bare on grounds that he denied Plaintiff a PREA investigation. A claim based on an inadequate investigation generally fails to state a constitutional violation. *See Jacoby v. PREA Coordinator*, No. 5:17-cv-00053-MHH-TMP, 2017 WL 2962858, *4 (N.D. Ala. Apr. 4, 2017) (explaining that "[t]he failure to investigate the plaintiff's [PREA] claims in a manner satisfactory to the plaintiff is not

a constitutional violation," and "[w]hether an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created"), *report and recommendation adopted*, 2017 WL 2957825 (N.D. Ala. July 11, 2017); *see generally Buchanan v. Metz*, 6 F. Supp. 3d 730, 758 (E.D. Mich. 2014) (explaining that the Sixth Circuit has not recognized a due process claim based on the way an investigation was initiated, planned, or executed); *Tinney v. Richland County*, No. 1:14CV703, 2016 WL 397963, *7 (N.D. Ohio Feb. 2, 2016) (explaining that "[t]he Sixth Circuit has not recognized a substantive due process claim for 'reckless investigation'"). Accordingly, Plaintiff's claims against Defendant Bare based on his failure to investigate must be dismissed for failure to state a claim.

3. **State Law Claims**

Plaintiff's claims under Ky. Rev. Stat. §§ 71.020, 71.040, 71.060, and 441.025 must also be dismissed for failure to state a claim because those statutes apply to county jails and fiscal courts. Plaintiff was incarcerated in a state prison at the time of the alleged events.

At this time, the Court will liberally construe Plaintiff's complaint and allow Plaintiff's claim for violations of Section 17 of the Kentucky Constitution to move forward. However, the Court is mindful that typically, "Kentucky law does not recognize a cause of action for alleged violations of Kentucky constitutional rights." *K.K. by & through J.K. v. Clark Cty. Bd. of Educ.*, 439 F. Supp. 3d 905, 916 (E.D. Ky. 2020) (quoting *Faul v. Bd. of Educ.*, No. 5:12-CV-277-KSF, 2013 WL 1511746, at *3 (E.D. Ky. Apr. 9, 2013)) (internal quotation marks omitted). Instead, "plaintiffs who believe their Kentucky constitutional rights have been violated may attempt to remedy the alleged injuries by filing traditional tort actions." *Id.* (citation omitted).

4. **Defendants Long, Harlan, and Bare**

9

Plaintiff's conspiracy claims against Defendant Long, Harlan, and Bare must be dismissed for the reasons discussed above. *See supra* Section III(B)(1).

### 5. Fourth Amendment Claim

The Sixth Circuit has recognized "that a convicted prisoner maintains some [Fourth Amendment] reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Sumpter-Bey v. Weatherford*, No. 3:10-1021, 2012 WL 1078919, at *6 (M.D. Tenn. Mar. 30, 2012) (quoting *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992)); *see also Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) ("[W]e have recognized that a prison policy forcing prisoners to be searched by members of the opposite sex or to be exposed to regular surveillance by officers of the opposite sex while naked . . . would provide the basis of a claim on which relief could be granted." (citations omitted)).

Plaintiff has not specifically pleaded a § 1983 claim arising from a violation of the Fourth Amendment. However, applying a liberal construction to Plaintiff's complaint as this Court is required to do at this stage, the Court will allow a claim for violation of bodily privacy under the Fourth Amendment to proceed against Defendants Long, Harlan, and Bare in their individual capacities based on Plaintiff's allegation that he was required to be naked in view of female prison personnel. *See Hite v. Embry*, No. 4:09CV-P73-M, 2010 WL 989158, at *4 (W.D. Ky. Mar. 12, 2010) (allowing a claim based on allegations that the defendant allowed female guards to view prisoner on surveillance video while he was naked and using the toilet to go forward under the Fourth Amendment even though Plaintiff did not specifically allege a Fourth Amendment violation).

## IV. CONCLUSION

Upon review, and construing the complaint broadly as the Court is required to do at this stage, the Court will allow Plaintiff's § 1983 claims based on allegedly cruel and unusual punishment under the Eighth Amendment to the United States Constitution and a violation of bodily privacy under the Fourth Amendment to proceed against Defendants Long, Harlan, and Bare in their individual capacities based on Plaintiff's allegations concerning the conditions of his confinement in the RHU. The Court also allows Plaintiff's claim for violation of Section 17 of the Kentucky Constitution to proceed against Defendants Long, Harlan, and Bare in their individual capacities based on Plaintiff's allegations concerning the conditions of his confinement in the RHU.

The Court will also allow a § 1983 claim based on alleged deliberate indifference to safety under the Eighth Amendment to proceed against Defendant Bare in his individual capacity based on Plaintiff's allegation that Defendant Bare informed other inmates that Plaintiff was a confidential informant. The Court will also allow a § 1983 claim based on alleged violations of due process under the Fourteenth Amendment to proceed against Defendant Bare in his individual capacity based on Plaintiff's placement in the RHU.

In allowing these claims to proceed, the Court passes no judgment on their merit or ultimate outcome.

Accordingly, for the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that

(1) Plaintiff's official-capacity claims against all defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking relief from a defendant who is immune from such relief.

(2) Plaintiff's individual-capacity claim against Defendant Jordan, his claim against Defendant Bare based on his failure to conduct a PREA investigation is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

(3) Plaintiff's state law claims arising out of KRS §§ 71.020, 71.040, 71.060, and 441.025 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date: May 24, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
A958.010