## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:20-CV-00813-JHM**

**TIMOTHY TURNER**                                                                           **PLAINTIFF**

**V.**

**HELEN R. LONG,** *et al.*                                                   **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion for summary judgment. [DN 32]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendants' motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Timothy Turner was an inmate at the Luther Luckett Correctional Complex (LLCC) at all relevant times. [DN 1 at 1]. Turner states that on June 29, 2020, he was housed in the Restrictive Housing Unit (RHU), where he was required to wear paper boxer shorts. [*Id.* at 5]. After four days in the same boxers, the boxers "had a foul odor and smelling (*sic*) of urine and were stained as well as falling apart." [*Id.*]. Turner informed Defendants Helen Long and Benjamin Harlan about the boxers, and they told him that boxers in his size, XXX-large, were on back order. [*Id.*]. Long repeatedly told him that he could fit into size large boxers. [*Id.*]. Turner says he weighed 350 pounds and could not wear a size large and that he "asked respectfully and repeatedly throughout the month . . . that he be allowed to wear his personal boxer's (*sic*)." [*Id.*]. He spent weeks "begging and pleading daily for relief" and that "the boxer's (*sic*) now had mold [in] them, urine and feces stains, an awful foul odor and falling (*sic*) apart beyond wearing." [*Id.*].

But Long told Turner that wearing the size large paper boxers was his only option, even though he "could not pull them up all the way for fear of them busting apart." [*Id.*]. Turner asserts that he walked down the hall to his room while other inmates heckled him and made sexually explicit comments. [*Id.*]. When her returned to his cell, the boxers came apart at the seam. [*Id.* at 5–6]. "The plaintiff was made to wear them through the night with his buttocks showing naked, with a cellmate and also the cell had a camera in it for others to view!" [*Id.* at 6.] The next morning, Turner informed Harlan that his boxers were ripped and pleaded with him to allow him to wear a pair of his own boxers until the paper boxers in his size arrived. [*Id.*]. Harlan refused Turner's request. [*Id.*].

The next month, LLCC staff allowed Turner to go to Recreation for one hour. [*Id.*]. "[F]or the most part he kept on a suicide smock as that is what they make all 'RHU' inmates wear," but he was "hot and sweaty at REC" and took his smock off so he could exercise. [*Id.*]. He reports that Defendant Berton Bare was present and witnessed Turner "again getting heckled and made fun of with comments of a sexual nature." [*Id.*]. He asked Bare if he could help him by filing a Prison Rape Elimination Act (PREA) complaint and told him that "he shouldn't be made to wear . . . large paper boxers that don't fit and show pure nudity of plaintiff's body including his bare buttocks and genitals." [*Id.*]. Bare responded that it was "not a PREA and 'looks like your ass [is] out luck!' " [*Id.*]. "When Lt. Bare made this comment, several of the inmates laughed and began saying obscene statements and comments." [*Id.*]. Hearing the commotion, a non-defendant female staff member arrived and heard Turner's pleas to be given a pair of his personal boxers to replace the paper ones that were falling apart. [*Id.* at 6–7]. The staff member obliged and gave Turner a pair of his personal boxers. [*Id.* at 7].

2

Turner also claims that Long and Harlan made him wear "a suicide smock, paper boxer's (*sic*), eat with a paper spoon, and suicide tray." [*Id.*]. He states that a person is "placed in the suicide attire for usually 72 hours or 3 days" to determine if he is no longer a harm to himself or others and then moved to "regular seg[regation] or RHU," where the inmate is allowed "1 pair of boxer's (*sic*) 'cloth,' 1 pair of RHU socks, 1 pair RHU top and bottom to be reinstated." [*Id.* at 9]. Turner claims these precautions were not needed because "Plaintiff never attempted suicide, talked about suicide nor did the plaintiff act homicidal, attempt homicide or speak of harming another person." [*Id.*].

> By making one live as a person who is contemplating suicide or homicide making that individual wear outfit suicide smock, not for 72 hours but for entirety of his or her stay in RHU takes a toll on a normal persons (*sic*) emotions and mindset. Plaintiff is still currently housed in RHU pending transfer.

[*Id.*]. Turner says this treatment has caused him "to become severely depressed, feeling hopeless and sad" and led to an "increase of psych medications and counseling needed where as such were not needed before." [*Id.*].

Turner also alleges that Bare told another inmate, Michael Carper, that Turner was a "confidential informant," and that several other inmates were within earshot when he said this. [*Id.* at 10]. Doing so put Turner's physical safety at risk, for it is well known that other inmates are likely to physically retaliate against those they believe are aiding the prison guards. [*See id.*]. Turners says Bare's actions "caused plaintiff to be severly (*sic*) depressed, [and] fear for his life," and that he "in fact was assaulted, and then was so scared he in fact had to request protective custody, therefore being deprived of his normal property due to Bare's actions." [*Id.*].

On December 4, 2020, Turner filed a 42 U.S.C. § 1983 action against Bare, Long, Harlan, and LLCC Warden Scott Jordan in their official and individual capacities for cruel and unusual punishment under the Eight Amendment, violating his right to privacy under the Fourth

3

Amendment, and for poor conditions of confinement under the Kentucky Constitution. [DN 1]. He also sued Bare for deliberate indifference to his safety under the Eighth Amendment, denial of due process under the Fourteenth Amendment, and for refusing to conduct a PREA investigation, along with claims under various Kentucky statutes. [*Id.*]. The Court dismissed all of Turner's official-capacity claims, his individual-capacity claims against Jordan, his PREA-investigation claim against Bare, and all his Kentucky statutory claims. [DN 7 at 11–12]. Bare, Long, and Harlan (collectively "Defendants") now move for summary judgment on the remaining claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of

4

the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

*A. Turner Never Moved for Summary Judgment*

At the outset, the Court must clarify that only Defendants moved for summary judgment. In a previous order, the Court noted that Defendants mistook Turner's pretrial memorandum, [DN 23], for a motion for summary judgment. [DN 31 at 1; *see* DN 25-1 at 26–28]. Despite this clarification, Defendants included a "Response to Plaintiff's Motion for Summary Judgment" in their brief. [DN 32 at 26–28]. Because Turner did not move for summary judgment, the Court will ignore that part of the brief.

*B. Turner's Deliberate Indifference Claim Against Bare Fails Because He Lacks Admissible Evidence to Support It*

5

"Prison officials are liable under the Eighth Amendment for failing to protect an inmate only if they act with deliberate indifference." *Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). Turner claims Bare deliberately endangered his health and wellbeing by telling other inmates that Turner was a "confidential informant." [DE 23 at 1].

Firstly, the Court cannot conclude that Turner failed to exhaust his administrative remedies. Inmates are required to complete every step of a prison's internal grievance process before they may bring suit in federal court. *Jones v. Bock*, 549 U.S. 199, 211, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). The Kentucky Department of Corrections requires inmates to submit grievances within five business days after the incident they wish to grieve occurs. [DN 32-15 at 8]. The alleged Bare-Carper conversation occurred on August 3, 2020, and Defendants claim that Turner did not grieve the incident until November 24, submitting one of Turner's grievance forms as proof. [DN 32-16 at 2]. But attached to that form is a letter from Turner complaining that this was the third time he had grieved the same incident without getting a reply. [*Id.* at 3]. For his part, Turner submitted a different grievance form, making identical allegations, that is dated to August 5. [DN 23-3 at 1]. Defendants did not argue that the grievance form Turner filed was a forgery or challenge its authenticity in any way.

Turner's claim fails on the merits, however, because he did not proffer admissible evidence that the alleged conversation between Bare and Carper happened. Turner's Complaint does not say he was personally present when Bare spoke to Carper. [*See* DN 1 at 10]. Despite clear instructions from the Court, [*see* DN 31 at 4], Turner did not submit any affidavits from anyone who may have heard the conversation firsthand. Instead, Turner rests his claim on his statements in the Complaint. [*See* DN 1 at 10]. But a verified complaint may only operate in place of an

6

affidavit if the plaintiff's allegations stem from personal knowledge, *Weberg*, 229 F.3d at 526 n.13, and nothing in the Complaint suggests Turner's allegations are based on personal knowledge. Instead, Turner's response suggests that other inmates told Turner that Bare said he was a "rat." [*See* DN 33 at 2]. But Turner cannot testify at trial that someone else told him that Bare told Carper he was an informant because that testimony would be inadmissible hearsay. *See* FED. R. EVID. 801(c), 802. Turner says "[t]he inmates and officers that could corroborate anything pertaining to this lawsuit fear retaliation, which would surely take place." [DN 33 at 6]. While the Court sympathizes with this concern, the fact remains that Turner needed their testimony to win this case. Without a sworn statement from someone with personal knowledge of the Bare-Carper conversation, Turner's claim cannot proceed.

    C. *Turner's Due Process Claim Against Bare Fails Because His Desire to Stay Out of the RHU Is Not a Protected Liberty Interest*

Turner posits that his placement in the RHU was in violation of his Fourteenth Amendment due process rights. To show a procedural due process deprivation based on placement in administrative segregation, the inmate must show that he had a protected liberty interest in avoiding such segregation. *See Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013). "A prison disciplinary proceeding," such as placement in segregation, "does not give rise to a protected liberty interest unless the restrictions imposed constitute atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Rodgers v. Johnson*, 56 F. App'x 633, 636 (6th Cir. 2002) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). "Generally, placement in disciplinary or administrative segregation does not constitute an atypical and significant hardship on the inmate." *Id.* (citations omitted). Turner has not presented any facts that suggest that his experience in the RHU was an "atypical and significant hardship." *Rodgers*, 56 F. App'x at 636. All the Court knows about his

7

time there was that he had "to wear a suicide smock, paper boxers, [and use a] paper spoon and suicide tray" and that his paper boxers were too small and ripped. [DN 23 at 2]. These minor restrictions on what Turner could wear and what utensils he could use do not create significant hardships. *See Rodgers*, 56 F. App'x at 636 (holding that "restricted use of the telephone, less exercise, no direct access to the law library, limited visiting hours, . . . and [having] to wear handcuffs and belly chains [outside the] cell" do not "constitute [] atypical and significant hardship"). He was also never housed in the RHU involuntarily for longer than nine weeks (he had a seven-month stint in it after requesting protective custody and refusing to return to general population), not long enough to trigger a protected liberty interest. [DN 32-1 at 3]; *see Cannon v. Bernstein*, No. 09-14058, 2015 WL 13741225, at *9–10 (E.D. Mich. May 26, 2015) (citing *Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007)) (applying bright-line rule that segregation for over 305 days is an atypical hardship that creates a protected liberty interest). Without a protected liberty interest, Turner's due process claim cannot proceed.

      D. *Turner's Cruel and Unusual Punishment Claim Fails Because He Does Not Claim to Have Suffered a Physical Injury*

Turner claims that his confinement in the RHU was cruel and unusual punishment because he was forced to wear a "suicide smock" and use paper clothes and utensils when he was not suicidal or homicidal, causing him "extreme emotional distress." [DN 1 at 8–9]. To establish an Eighth Amendment violation premised on conditions of confinement, an inmate must show that 1) he suffered a "sufficiently serious" deprivation and 2) the prison official responsible for it acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 832–34 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). But an inmate cannot bring an Eighth Amendment claim if he alleges that the deprivation he suffered only caused him emotional distress. 42 U.S.C. § 1997e(e). "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury

suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" *Id.*; *accord Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145–46 (6th Cir. 2002) ("Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.' "). The Sixth Circuit has "repeatedly applied § 1997e(e) to bar Eighth Amendment claims for mental or emotional harm in the absence of physical injury." *Bartelson v. Parker*, No. 19-6027, 2021 WL 9544912, at *2 (6th Cir. 2021) (citations omitted). Turner only alleged that his RHU confinement caused him emotional distress, so § 1997e(e) bars his Eighth Amendment claim.

### E. Turner's Bodily Privacy Claim Fails Because Turner's Exposure Was Accidental

Turner claims that Defendants violated his Fourth Amendment right to privacy by making him wear paper boxers that ultimately ripped and exposed his backside. The Sixth Circuit has noted that "there must be a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary for some legitimate, overriding reason . . . ." *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). "[A] prison policy forcing prisoners to be searched by members of the opposite sex . . . would provide the basis of a claim on which relief could be granted." *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004). "[I]f plaintiff can demonstrate that [defendants] planned or intended to see [him] during the search," he has a claim. *Id.* But the "accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation." *Jones v. Lawry*, No. 2:19-CV-49, 2019 WL 2482361, at *7 (W.D. Mich. June 14, 2019) (citing *Mills*, 389 F.3d at 579)).

9

Turner has provided no evidence or even alleged that Defendants forced him to disrobe or expose himself in front of them. He only alleges that his backside became exposed after his boxers ripped because they were old and/or too small. [DN 23 at 2–3]. Any exposure of Turner to female LLCC staff—or anyone else, for that matter—was accidental. *See Jones*, 2019 WL 2482361, at *7. Further, Turner had a security smock that went down to the mid-thigh, [DN 23 at 2; DN 32-1 at 17–18], so even if giving Turner boxers that were likely to rip constituted forcing him to expose himself, wearing the smock would have prevented that exposure. Because there is no evidence that anyone forced Turner to expose himself, Defendants are entitled to summary judgment.

### F. The Court Declines to Decide Turner's Kentucky Constitutional Claim

In addition to alleging federal constitutional violations under § 1983, Turner makes a claim arising under the Kentucky Constitution. Under 28 U.S.C. § 1367(c)(3), however, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that the federal claims over which this Court has jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state-law claim. *See United Mine Workers*, 383 U.S. at 726. Consequently, the state-law claim will be dismissed without prejudice.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, [DN 32], is **GRANTED**.

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

June 28, 2023

cc: Timothy Turner, *pro se*
    Counsel of Record

10